## LE CACHEUX *v.* CUTTER.

A party being about to fail, can assign a bill of lading of goods to arrive, not yet paid for, to another, in trust, to devote the proceeds to the payment of the vendor, and such assignment is good against attaching creditors.

The act constitutes the assignee the agent of the vendor, and being for the benefit of the vendor, his assent is presumed.

It renders a stoppage *in transitu* unnecessary, for there is a rescission before there could be a stoppage.

The fact that the language of the transfer implied the right of the assignee to sell the goods, can have no influence, for if he sold, it would be as agent of the vendor.

APPEAL from the Superior Court of the City of San Francisco.

The plaintiff recovered judgment by default against the defendants, H. F. Cutter & Co. on a promissory note.

The appeal is taken from the order on proceedings supplementary to execution, made upon an agreed statement of facts, as follows: The defendants, finding themselves in a failing condition, and having bought certain goods of W. P. Jones, of New York, for which they had given their note at seven months, (said goods being still on their way to San Francisco,) endorsed the bill of lading for the goods to C. A. Low, and gave him also the invoice of the goods, with the following endorsement thereon:

" We hereby transfer the within invoice to Mr. C. A. Low, net proceeds, after paying insurance charges, to be devoted by him to the payment of our note to W. P. Jones, dated March 23, 1856, payable seven months from date, for $250 75; said note having been given in payment of the invoice.

" H. F. CUTTER & Co.

" San Francisco, June 11, 1856."

Mr. Low agreed to execute the trust thus created, and Mr. Cutter and Mr. Low, by the next mail, advised Mr. Jones thereof.

The ship containing the goods arrived in San Francisco July 14, 1856. The plaintiff having commenced this suit and issued attachment, served a copy thereof on the consignees of the ship, Messrs. Lent, Newell & Co. The latter thereupon refused to deliver the goods to Low, but subsequently, by agreement of the plaintiff, the goods were delivered to Low, and a copy of the attachment was served upon him. Upon this agreed statement of facts, the case was submitted to the Court below, for the purpose of obtaining an order upon Low to deliver the goods under plaintiff's writ, or an order discharging the proceedings supplementary, as the Court might decide.

The Court below entered an order discharging the proceedings against Low. Plaintiff appealed.

*Saunders and Hepburn* for Appellant.

If this had been a general assignment, there is no doubt but it would be void, that proposition having been distinctly decided in the case of Cheever *v.* Hays, 3 California Rep., 471.

The fact of the assignment being partial, makes no difference in principle. The object of the insolvent law prohibiting assignments was to compel the insolvent desiring to make one, to do it in the way, and subject to the checks and securities, imposed by law. This, Cutter & Co. could and ought to have done at the time they made the assignment, and by so doing, each of their creditors would have participated equally in their assets. Instead of this, they undertake to pay one creditor in full, and as this is the very thing which our insolvent law intended to prevent, the fact of the debt being a meritorious one, will not defeat the operation of a rule which was intended for general opera-

tion, without regard to hard cases. Besides, the Court has decided in the case of Groeschen *v.* Page *et al.*, that a partial assignment is equally void with a general assignment.

It is respectfully submitted, therefore, that the assignment to Low is void, both on principle and authority.

But the counsel for the respondents, seeing that the law is against them on this point, endeavor to liken this case to a case of stoppage *in transitu*, and insist that Low, who is a mere trustee, can hold the goods for account of Jones, the original vendor.

To determine this question, it is only necessary to look at the instrument which brings Low in connection with the property. Here there is a transfer of the property, with orders to sell it and appropriate the proceeds in a given way; and under the transfer, Low has taken possession of the property.

Now, the right of stoppage *in transitu* is a right on the part of the vendor, in case of the insolvency of the vendee, to seize the goods while they are in the hands of a middle man, and the moment they are delivered to the vendee, or his assignee, the right is gone. Cutter & Co. had the power, therefore, to refuse to receive the goods and relinquish the consignment, and even to request a stranger to take possession of them for the consignor, and if he, the consignor, had afterwards consented, the sale would have been rescinded, and the title to the goods would have reverted.

But instead of that, Cutter & Co. assert title to the goods, take possession of them by their agent, and direct him to sell them and dispose of the proceeds; and it is under this title that Jones is now claiming the property. To use the language of the Court, in the case of Naylor *v.* Demil, in 8 Pick., 204, 205 : "He does not rely on his right of stoppage *in transitu*, but, on the contrary, he affirms and establishes the sale in a manner inconsistent with that right." The right of stopping *in transitu* cannot be exercised under a title derived from the consignee. Ib., 204.

By examining the cases cited by the respondents, the Court will see invariably that where the vendee or his agent received the goods, the right of stopping was at an end. The case of Alkins *v.* Barrack, 1 Strange, 165, cited by the respondent, goes on the ground that the original vendor acquired a new title from the vendee, and has nothing to do with stopping *in transitu*.

In State *v.* Field, J. Term Rep., 212, the vendee finding himself insolvent, countermanded the purchase before the goods came into his hands, and this was considered by the Court, under the facts of that case, as a rescission of the contract.

The Court is particularly referred to the case of Bayley *v.* Culverwell, 15 English C. L. Rep., 223, cited by the respondent, and greatly relied on.

It is urged against this attaching creditor, that he has no equity, because he is suing merely for his own account. The answer to this is that he is suing for his own account for the reason that Cutter & Co.,

by disposing of their property, in violation of law, instead of placing it in the hands of the Court, to be distributed according to equity, have compelled him to do it; and if endeavors of this sort to defeat the policy of the insolvent laws and to prefer favorite creditors shall succeed, the general creditor may bring suits, but he will make nothing out of them.

*Janes, Doyle, Barber & Boyd* for Respondent.

The rights acquired by Mr. Low (acting for Mr. Jones) under and by virtue of the endorsement of the bill of lading to him on the 11th day of June, 1856, are prior to any lien that could have been obtained by Le Cacheux and Galley through their garnishment or attachment on the 14th day of July, 1856.

The respondent deems it unnecessary to inquire whether the transfer of the bill of lading operated as a transfer of the property to which it referred, as the question at issue in this case can be disposed of without discussing the validity of a partial assignment of property by a debtor in embarrassed circumstances, for the benefit of a particular creditor.

It is only requisite, in order to sustain the rights of Mr. Jones, to show that on the 11th day of June, 1856, by virtue of the endorsement of the bill of lading and invoice, he acquired a right to the possession of the goods, conceding the title to have been still in Cutter & Co., the vendees. The case, as stated, shows that Jones occupied the position and acquired the privileges of a stopper *in transitu.*

The effect of the transfer, under the circumstances, set forth in the case, was to accomplish a perfectly legitimate object, viz.: the re-possession by Jones of the goods sold to Cutter & Co., in consequence of the inability of the firm to pay for them. By Cutter & Co.'s consent, Jones simply acquired a right which could have been enforced by adverse proceedings against them.

That Jones had a right to stop *in transitu* at the time that Cutter & Co. transferred the bill of lading to Jones, is too clear, on authority, to admit of dispute. 1 Parsons on Contracts, 477 ; Abbott on Shipping, marg. paging (528); Buckley *v.* Furness, 15 Wend., 137 ; Smith *v.* Goss, 1 Camp., 282.

It seems equally clear that Cutter & Co. were justified in conceding this right without compelling Jones to resort to hostile proceedings. This right can be sustained on any one of the following grounds : 1. A stoppage *in transitu.* 2. A rescission of the original contract of sale and the execution of a new contract between Cutter & Co. and Jones. 3. An abandonment of the consignment, or relinquishment of the right of possession.

As to stoppage *in transitu,* this admits the title to have been in Cutter & Co, the exercise of the right of stoppage *in transitu* being analogous to the acquisition of a lien on the property, which, of course, implies title in another. 1 Parson on Contracts, 479, 480 ; Smith's Merc. Law, 648, 649.

All that the respondent claims is that the transfer of the bill of lading and its presentment to the consignee while the goods were yet *in tran-*

*situ,* (1 Parsons on Contracts, 483,) were equivalent to notice to the consignee, and superseded the necessity of proceedings *in invitum.* Naylor *v.* Dennie, 8 Pick., 203 ; 1 Smith's Lead. Cases, 667, and cases cited.

If it be said that Mr. Low had no authority to stop *in transitu,* the answer is that no authority was necessary : first, because the exercise of the right *in invitum* was superseded by Cutter & Co.'s consent and acquiescence ; second, because the transfer was so obviously for the benefit of Jones, that his adoption of it must be presumed ; third, because no prior authority on behalf of the vendor is necessary to the validity of a stoppage *in transitu.* Atkins *v.* Barwick, 1 Strange, 165 ; Satte *v.* Field, 5 Tenn. R., 212.

The American editors of Smith's Leading Cases (vol. 1, p. 666) say : " It would appear that when the circumstances are such as to give a legal right, (of stoppage *in transitu,*) a stranger may exercise it without any connection with the party beneficially interested, provided a subsequent ratification be given, and by relation authorize the whole proceeding, *ab initio.* See Bartram *v.* Farebrother, 4 Bing., 579 ; 2 Ross Com. Law., 123, 180, vol. 69 Law Library, new series ; Bayley *v.* Culverwell, 8 Barnwell and Cresswell, 448 ; 15 Eng. Common Law R., 263 ; Feese *v.* Wray, 3 East., 93 ; Ward *v.* Lewis, 4 Pick., 520 ; Berly *v.* Taylor, 5 Hill, 585 ; Mills *v.* Ball, 2 Bos. and Puller, 457, cited Hilliard on Sales, 264, 266 ; Richardson *v.* Goss, 3 Bos. and P., 119 ; Lawes' Charter Parties, 561.

Whether the transaction was technically a stoppage *in transitu,* or whether it amounted to a rescission of the original contract of sale, and the formation of a new agreement, by which Jones was to receive back the goods, and apply the proceeds to the liquidation of Jones' debt, is immaterial. Ash *v.* Putnam, 1 Hill, 303 ; Naylor *v.* Dennie, 8 Pick., 204. Scholfield *v.* Bell, 14 Mass., 40, is almost exactly parallel with the present case, as to effect of transfer of bill of lading to the original vendor. James *v.* Griffin, 1 Mees & Welsby Exchequer R., 20 ; 2 ib., 622 ; 1 Smith Leading Cases, 645.

Treating this case as a case of stoppage *in transitu,* Mr. Jones relies simply on the transfer of the bill of lading, not as changing the property, but as evidencing his right to the possession of the goods. The bill of lading is the universal mercantile symbol of the right of possession of merchandise, and possession of it is, for many purposes, equivalent to an actual possession of the goods which it covers. Gardner *v.* Howland, 2 Pick., 599 ; 1 Smith's Leading Cases.

Treating the case as one of absolute rescission, the attachment would be utterly ineffectual. Regarding it as a case of stoppage *in transitu,* the attachment would reach the residuary interest of Cutter & Co. in the goods, after paying the purchase money and stipulated charges to Jones out of the proceeds.

Mr. Justice HEYDENFELDT delivered the opinion of the Court. Mr. Justice TERRY concurred.

The transfer of the bill of lading to Low, constituted the latter the agent of Jones, and this act being for the benefit of Jones, his assent must be presumed.

The transfer was, therefore, equivalent to a re-delivery of the goods to the vendor, and to a rescission of the contract of purchase before the goods had reached the hands of the vendees. It rendered a stoppage *in transitu* unnecessary, and indeed took away that right, for there was a rescission before there could be a stoppage. The fact that the language of the transfer implied the right on the part of Low to sell the goods, can have no influence, for if he sold it would be as agent of Jones.

Judgment affirmed.